UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEONARD CUMINOTTO,

Plaintiff,

v. CASE NO. 8:25-cv-2501-SDM-AAS

SGT. RYAN DOLL,

Defendant.
______________________________________/

**ORDER**

Cuminotto's complaint alleges that the defendants violated his civil rights by retaliating against him for filing a grievance while imprisoned in the Hardee Correctional Institution. As discussed in an earlier order (Doc. 4), Cuminotto (1) alleges that Defendant Sgt. Doll sprayed him with "pepper spray" without warning and in retaliation for his having filed a grievance; (2) files this same action earlier in 8:24-cv-1014-SDM-NHA, which was dismissed without prejudice because Cuminotto had not exhausted his administrative remedies; and (3) represents that he has now completed the exhaustion process. The earlier order directs Cuminotto to file an amended complaint and explains that he can neither incorporate by reference the allegations in the earlier action nor sue a defendant based on *respondeat superior*. Another order (Doc. 9) determines that Cuminotto's amended complaint (Doc. 8) warrants service on Defendant Sgt. Doll, who moves under Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss this action with prejudice.

Sgt. Doll contends that Cuminotto failed to properly exhaust his administrative remedies before filing this action and correctly argues that exhaustion of administrative remedies is required before a prisoner files a Section 1983 action. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Consequently, the grievance procedures established for Florida's Department of Corrections ("DOC") govern.

**DOC's Grievance Procedures**

Chapter 33-103, Florida Administrative Code, establishes the procedures for prisoner grievances and appeals. Section 33-103.001 explains that the purpose of the grievance process "is to provide an inmate with a channel for the administrative settlement of a grievance" and to provide "the inmate with the opportunity of having a grievance heard and considered, [which] will assist the Department by providing additional means for internal resolution of problems and improving lines of communication." The procedures establish (1) what issues can and cannot be addressed in the grievance process, (2) deadlines for filing, responding to, and appealing a grievance, and (3) forms that must be used in the grievance process. The three steps in the process are an informal grievance, a formal grievance, and an appeal to the Secretary.

Except for a few specific issues, the first step in the grievance process is for the inmate to submit the required form "by placing the informal grievance in a locked grievance box," where it will be retrieved and "forwarded to the staff member who is

responsible in the particular area of the problem . . . ." Section 33-103.005(1). The response to the informal grievance must be written, returned to the inmate with both the original grievance and one copy, and state the reason or reasons why the grievance was approved, denied, or returned without action. Section 33-103.005(4).

The second step is the filing of a formal grievance, which is addressed to one of the wardens at the institution. Each formal grievance "must address only one issue or complaint" and include a copy of the informal grievance and response unless exempted by regulation. Section 33-103.006(2). A designated institutional official investigates the issue and provides the inmate a response within twenty days. If not satisfied with the response, the inmate may appeal.

The third step is an appeal to the Office of the Secretary. Under Section 33-103.007(2), each appeal is limited to only one issue and must include a copy of both the formal grievance and the response. The Bureau of Policy Management and Inmate Appeals reviews, investigates, and responds to each appeal.

**Controlling Legal Principles**

"[T]he purpose of administrative exhaustion . . . 'is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues.'" *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985)). As a consequence, "[a] prisoner must exhaust each claim that he seeks to present in court." *Arias v. Perez*, 758 F. App'x 878, 880 (11th Cir. 2019); *accord Jones*, 549 U.S. at 219-20 ("All agree that no unexhausted claim may be considered.").

This mandatory exhaustion requirement applies even when administrative remedies do not allow the requested relief. *Ngo*, 548 U.S. 85 ("[A] prisoner must now exhaust administrative remedies even where the relief sought — monetary damages — cannot be granted by the administrative process."); *Booth v. Churner*, 532 U.S. 731, 736 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.").

A prisoner must properly exhaust the prison's administrative remedies. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The failure to "properly exhaust" the administrative remedies will bar a prisoner from pursuing a claim in federal court. "[S]aying that a party may not sue in federal court *until* the party first *pursues* all available avenues of administrative review necessarily means that, if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court." *Ngo*, 548 U.S. at 100.

A defendant has the burden of proving that a prisoner did not fully exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dixon v. United States*, 548 U.S. 1, 8 (2006) (recognizing that the burdens of both production and persuasion are on the same party). Sgt. Doll supports his motion with copies of Cuminotto's various grievances and with affidavits from both the grievance coordinator at the institutional level and the DOC's Bureau Chief in charge of grievance appeals. (Docs.

17 and 18) As determined below, Cuminotto failed to properly exhaust the relevant claims.

**Cuminotto's Grievances**

A two-step analysis is employed for deciding whether a prisoner meets the exhaustion requirement, as *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008), explains:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff 's response, and if they conflict, takes the plaintiff 's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff 's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*See also Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). As stated above, Cuminotto filed this same action earlier in 8:24-cv-1014-SDM-NHA, which was dismissed because Cuminotto had not exhausted his administrative remedies. Cuminotto contends that now he has completed the exhaustion process. As determined below, Cuminotto's contention fails under the first of the two-step analysis.

Sgt. Doll shows that, after the dismissal of the earlier action, Cuminotto submitted a grievance directly to the Secretary, Department of Corrections, regarding the underlying October 2023 incident and that the grievance was returned without action as untimely. (Doc. 18) Cuminotto contends (Doc. 19) that filing the grievance directly with the Secretary — instead of filing both an informal and a formal grievance

at the institutional level before appealing to the Secretary — was permitted because (1) his grievance was based on Sgt. Doll's alleged retaliation, (2) Section 33-103.005(1) exempts "a grievance of reprisal" from proceeding at the institutional level, and (3) Section 33-103.007(6) authorizes the filing of a grievance directly with the Secretary for a grievance of reprisal. Although Cuminotto is correct that the procedures allow the filing of a grievance of reprisal directly with the Secretary, the paper Cuminotto submitted to the Secretary was not a direct grievance of reprisal but an appeal of the denial of his grievance filed at the institutional level, which appeal the Secretary rejected as untimely. (Doc. 18 at 7) Cuminotto does not address the untimeliness of the paper.

Cuminotto's paper submitted to the Secretary in 2025 — whether considered an appeal or a direct grievance of reprisal — was untimely because each type of review must be filed within fifteen days of either the denial of the formal grievance (Section 103.011(1)(c)) or the incident of reprisal (Section 103.011(1)(d)), both of which occurred in 2023. Cuminotto's 2025 attempt to utilize the grievance process after the dismissal of his earlier action fails to comply with the exhaustion requirement because, as *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), explains, "the PLRA's exhaustion requirement contain[s] a procedural default component: Prisoners must timely meet the deadlines of [the state]'s administrative grievance procedures before filing a federal claim." Cuminotto failed to properly exhaust his administrative remedies.

Sgt. Doll's motion to dismiss (Doc. 16) is **GRANTED**. This action is **DISMISSED WITH PREJUDICE**. The clerk must enter a judgment against Cuminotto and close this case.

ORDERED in Tampa, Florida, on October 20, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE